**FILED**
JAMES J. VILT, JR. - CLERK

JAN 18 2022

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

UNITED STATES OF AMERICA

v.

MANDY ELLEN BAUER

INFORMATION

NO. 1:22 CR-4-GNS

18 U.S.C. § 1343

The United States Attorney Charges:

### COUNTS 1-9
*(Wire Fraud)*

On or about and between April 2, 2020, and July 1, 2020, in the Western District of Kentucky, Green County, Kentucky, the defendant, **MANDY ELLEN BAUER**, devised a scheme to defraud and to obtain money by means of false and fraudulent pretenses and representations, and transmitted writings and signs in interstate wire communications for the purpose of executing the scheme, to wit:

1. The Coronavirus Aid, Relief, and Economic Security (CARES) Act and the Families First Coronavirus Response Act (FFCRA) established that eligible employers that retain their employees are allowed tax credits against applicable employment taxes. Employers are required to file employment tax returns, e.g. quarterly Form 941, *Employer's Quarterly Federal Tax Return*, for the business to report employment taxes; and required to file annual Form W-2, *Wage and Tax Statement*, for each employee to report paid wages.

2. The Internal Revenue Service (IRS) created the Form 7200, *Advance of Employer Credits Due To COVID-19*, to allow employer businesses to request an advance payment of the tax credits prior to the filing of their Form 941. The IRS is headquartered in Washington, DC, and maintains its computer servers outside of the state of Kentucky.

3. The United States Small Business Administration (SBA) is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The SBA is headquartered in Washington, DC, and maintains its computer servers outside Kentucky. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4. As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, the CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

5. One of the new programs was the SBA Paycheck Protection Program (PPP), which was a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA would forgive all or part of loans if all employees were kept on the payroll for eight weeks and borrowers submitted documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities. Interested applicants applied through an existing SBA lender or any other participating federally insured financial institution.

6. The PPP application process required applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contained information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner, including questions relating to criminal history. Applicants were also required to make good faith certifications, including that economic uncertainties have necessitated their loan requests for continued business operations and that they intended to use loan proceeds only for authorized purposes.

7. Another related response to the COVID-19 outbreak was an expansion of an existing disaster-related program - the Economic Injury Disaster Loan (EIDL) - to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds could be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits or for expansion of a business.

8. Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury and applicants applied through the SBA via an online portal and application. The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including:

    a. information as to the gross revenues for the business prior to January 31, 2020;

    b. the cost of goods sold;

3

    c.     and information as to any criminal history of the business owner.

9. EIDL applicants electronically certified that the information provided was accurate and were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

10. On April 2, 2020, **BAUER** filed an application (3301428208) for a Small Business Administration (SBA) Economic Injury Disaster Loan (EIDL) for FPS. **BAUER** falsely claimed that FPS had six employees, $29,500 in gross revenue, and $1,800 in lost rents due to the disaster. The potential loan amount was $1,800.

11. On April 5, 2020, **BAUER** filed an application (3302541838) for a SBA EIDL for FPS. **BAUER** falsely claimed that FPS had six employees, $52,300 in gross revenue, and $9,000 in lost rents due to the disaster. The potential loan amount was $9,000.

12. On April 7, 2020, **BAUER** applied for a PPP loan for FPS and submitted a SBA Form 2483, *Paycheck Protection Program Borrower Application Form*, to ReadyCap Lending. **BAUER** falsely claimed that FPS had average monthly payroll of $11,100 and six employees. The potential loan amount was $30,800.

13. On April 8, 2020, **BAUER** applied for a PPP loan for FPS and submitted a SBA Form 2483 to ReadyCap Lending. **BAUER** falsely claimed that FPS had average monthly payroll of $11,000 and six employees. The potential loan amount was $27,700.

14. On April 13, 2020, **BAUER** filed an application (330697682) for a SBA EIDL for FPS. **BAUER** falsely claimed that FPS had six employees, $28,000 in gross revenue, and $15,000 in cost of goods sold. The potential loan amount was $6,500.

15. On April 29, 2020, BAUER applied for a PPP loan for FPS, and submitted a SBA Form 2483, *Paycheck Protection Program Borrower Application Form*, to ReadyCap

4

Lending. **BAUER** falsely claimed that FPS had average monthly payroll of $13,496 and six employees. The potential loan amount was $33,700.

16. On May 29, 2020, **BAUER** faxed a Form 7200, *Advance Payment of Employer Credits Due to COVID-19*, to the Internal Revenue Service (IRS). **BAUER** falsely claimed that FPS had 10 employees and $37,000 in quarterly wages, when in fact FPS did not have any employees or wage expenses. **BAUER** requested a $70,000 advance payment.

17. On June 29, 2020, **BAUER** filed an application (33073299618) for a SBA EIDL for FPS. **BAUER** falsely claimed that FPS had 10 employees, $43,900 in gross revenue, and $26,000 in cost of goods sold. The potential loan amount was $8,950.

18. On July 1, 2020, **BAUER** faxed another Form 7200. **BAUER** falsely claimed that FPS had six employees and $37,350 in quarterly wages, when in fact FPS did not have any employees or wage expenses. **BAUER** requested a $43,064.55 advance payment.

19. With each SBA Form 2483, **BAUER** submitted a fraudulent Form 941, *Employer's Quarterly Federal Tax Return*, for the first quarter of 2020, which stated FPS has six employees, gross wages of $37,350, and $7,527 of taxes due.

20. According to IRS records, FPS did not file any Forms 941 or W-2 and has never made any tax deposits.

| COUNT | DATE | INTERSTATE WIRE COMMUNICATION |
|---|---|---|
| 1 | April 2, 2020 | EIDL loan application transmitted by wire from Kentucky to the SBA outside of Kentucky |
| 2 | April 5, 2020 | EIDL loan application transmitted by wire from Kentucky to the SBA outside of Kentucky |

| COUNT | DATE | INTERSTATE WIRE COMMUNICATION |
|---|---|---|
| 3 | April 7, 2020 | SBA Form 2483 in support of PPP loan application transmitted by wire from Kentucky to ReadyCap lending in New Jersey |
| 4 | April 8, 2020 | SBA Form 2483 in support of PPP loan application transmitted by wire from Kentucky to ReadyCap lending in New Jersey |
| 5 | April 13, 2020 | EIDL loan application transmitted by wire from Kentucky to the SBA in outside of Kentucky |
| 6 | April 29, 2020 | SBA Form 2483 in support of PPP loan application transmitted by wire from Kentucky to ReadyCap lending in New Jersey |
| 7 | May 29, 2020 | IRS Form 7200 transmitted by wire from Kentucky to the IRS in Oklahoma requesting advance payment of tax credits |
| 8 | June 29, 2020 | EIDL loan application transmitted by wire from Kentucky to the SBA outside of Kentucky |
| 9 | July 1, 2020 | IRS Form 7200 transmitted by wire from Kentucky to the IRS in Virginia requesting advance payment of tax credits |

In violation of Title 18, United States Code, Section 1343.

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

MAB:DW:lb:01072022

UNITED STATES OF AMERICA v. MANDY ELLEN BAUER

## PENALTIES

Counts 1-9: NM 20 yrs./$250,000/both/NM 3 yrs. Supervised Release (each count)

## NOTICE

### ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.

### SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual | Felony: | $100 per count/individual |
| | $125 per count/other | | $400 per count/other |

### FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due immediately unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following:**

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

   For offenses occurring after December 12, 1987:

   No **INTEREST** will accrue on fines under $2,500.00.

   **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

   **PENALTIES** of:

   10% of fine balance if payment more than 30 days late.

   15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

   If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

**RESTITUTION**

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law. 18 U.S.C. § 3663

**APPEAL**

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

**PAYMENTS**

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made <u>payable to the Clerk, U.S. District Court</u> and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY  40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY  42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY  42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY  42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.